UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY LEWIS,

          Plaintiff,

    v.

CITY AND COUNTY OF SAN FRANCISCO,

          Defendant.

Case No.  25-cv-09276-JCS

**ORDER DENYING MOTION TO DISMISS, VACATING MOTION HEARING AND MOVING CASE MANAGEMENT CONFERENCE TO 2:00 P.M.**

Re: Dkt. No. 13

## I.    INTRODUCTION

Plaintiff Anthony Lewis, who is blind, brings this action challenging a policy of the San Francisco Public Library ("Library") requiring that individuals with service dogs who seek to enter the library with their dogs must provide proof that the dog has been vaccinated against rabies.  He asserts disability discrimination claims against the City and County of San Francisco ("CCSF") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; California Government Code section 11135; and the Disabled Persons Act, Cal. Civ. Code sections 54–54.1. Presently before the Court is CCSF's Motion to Dismiss ("Motion").  The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing scheduled for March 4, 2026 pursuant to Civil local Rule 7-1(b). The Case Management Conference scheduled for the same date is moved from 9:30 a.m. to 2:00 p.m.  For the reasons stated below, the Motion is DENIED.[1]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    Allegations in the Complaint

Lewis alleges in his complaint that on April 8, 2025, he went to the Main Branch of the San Francisco Public Library to visit the Talking Books and Braille Center for the Blind and brought his service dog with him. Compl. ¶ 10. According to Lewis, he was stopped at the entrance by a security guard who asked him for proof of his service dog's rabies vaccination records. *Id.* ¶ 11. Lewis alleges that he had "never been asked to provide proof of vaccination during his many prior visits to the Library" and that "when he inquired about whether this was a policy and when it began, the security guard stated 'look on the wall. It's been there for a year and a half,' despite it being apparent that Mr. Lewis is blind and cannot see the wall." *Id.* ¶¶ 13-14. Lewis alleges that he told the security guard that he did not have proof of his dog's vaccination status with him and that the request for documentation was illegal. *Id.*¶ 15. The security guard "eventually let [Lewis] enter but warned him that in the future he would be denied access unless he carried proof of [his service dog's] vaccination status." *Id.* Plaintiff alleges that he was then stopped a second time, by a different security guard and "had to inform the guard three times that he could not see and needed his service dog with him, before he was allowed to proceed." *Id.* ¶ 16.

Lewis alleges that the "policy that service dog handlers must show proof of rabies vaccination before being permitted entry is posted on the Library's website" and on "two signs on the wall at entrances" to the Library, neither of which is in Braille. *Id.* ¶¶ 17-18. He alleges that the same day he was asked for proof of his service dog's vaccination he filed a complaint with the San Francisco Office on Disability and Accessibility ("ODA")" requesting that the library eliminate the discriminatory and illegal policy of requiring proof of vaccination for service dogs." *Id.* ¶ 20. According to Lewis, "[t]he ODA responded on April 11, 2025, acknowledging receipt of the complaint and stating the Library would investigate and respond within 30 business days." *Id.* "On May 9, 2025, the Library's interim manager, Naomi Jelks, responded to Plaintiff that this was a City-wide policy" that was "developed in partnership with ODA and the City Attorney's office" and that it was compliant with the ADA. *Id.* ¶ 21. Lewis "requested an exception to the

2

policy as a reasonable accommodation of his disability [ ] [but] Ms. Jelks denied the request." *Id.* Lewis alleges that he filed a Government Claim with CCSF on August 7, 2025, but received no response. *Id.* ¶ 22.

Lewis "experienced significant emotional distress by the security guard's statement to 'look at the wall' when it is obvious he is blind" and he "felt excluded and humiliated by being pulled out of line and repeatedly asked to provide proof of rabies vaccination records for his service dog." *Id.* ¶ 19. He further alleges that as a result of Defendant's actions "he experienced emotional distress, humiliation, diminished trust in local government services and programs, anxiety about future public interactions, and loss of equal access to essential government services." *Id.* ¶ 23. "As a resident of the Bay area and a frequent user of the Library based on its collection specifically directed at people with visual disabilities, Plaintiff would like to return to the Library" but he "cannot do so without risk of discrimination until the policy is rescinded." *Id.* 24.

In his ADA claim ("Claim One"), Lewis alleges that he has been subject to discrimination based on disability because he has been denied "full and equal participation in and . . . the full benefits of the Public Library." *Id.*. ¶ 25. In particular, he alleges that "[b]y instituting a discriminatory policy to require proof of vaccination records for service and support dogs in order to enter the Library; and instructing its security guards to stop and question people with service dogs at the entry to its buildings, [CCSF] has discriminated against Plaintiff and other people with disabilities who use service dogs" by: 1) "[e]stablishing a City-wide policy requiring production of a service dog's vaccination records as a condition of entering a City building" in violation of 28 C.F.R. § 35.136(f)[2]; 2) "[f]ail[ing] to modify policies, practices and procedures to permit the use

---

[2] This section provides as follows:

(f) Inquiries. A public entity shall not ask about the nature or extent of a person's disability, but may make two inquiries to determine whether an animal qualifies as a service animal. A public entity may ask if the animal is required because of a disability and what work or task the animal has been trained to perform. A public entity shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal. Generally, a public entity may not make these inquiries about a service animal when it is readily apparent that an animal is trained to do work or perform tasks for an individual with a disability (e.g., the dog is observed guiding an individual who is blind

3

of a service animal by a person with a disability" in violation of 28 C.F.R. § 35.136(a)[3]; and 3) [f]ail[ing] to allow individuals with disabilities to be accompanied by a service animal in all areas of a public facility" in violation of 28 C.F.R. § 35.136(g).[4] *Id.* ¶ 26. Lewis alleges that he "has been damaged and will suffer irreparable harm unless Defendant is ordered to provide Plaintiff and other blind members of the public with full and equal access to its programs, services, and activities and amend its existing policies and procedures to comport with the requirements of the ADA with respect to the enjoyment of the facilities by persons with disabilities." *Id.*

In his Rehabilitation Act Claim ("Claim Two"), Lewis alleges that CCSF has discriminated against him in violation of Section 504 of the Rehabilitation Act by: "(i) Denying the opportunity to participate in or benefit from the aid, benefit, or service; (ii) Affording an unequal opportunity to participate in or benefit from the aid, benefit, or service; [and] (iii) Otherwise limiting the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service." *Id.* ¶ 34 (quoting 34 C. F. R. § 104.4(b)(1)[5]). In particular, he contends CCSF

---

or has low vision, pulling a person's wheelchair, or providing assistance with stability or balance to an individual with an observable mobility disability).

28 C.F.R. § 35.136(f).
[3] This section provides:

  (a)  General. Generally, a public entity shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability.

28 C.F.R. § 35.136(a).
[4] This section provides:

  (g)  Access to areas of a public entity. Individuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a public entity's facilities where members of the public, participants in services, programs or activities, or invitees, as relevant, are allowed to go.

28 C.F.R. § 35.136(g).
[5] This section provides;

  (b)  Discriminatory actions prohibited.
  (1) A recipient, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap:
  (i) Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service;
  (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
  (iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as

4

has violated Section 504 by "[i]nstituting a discriminatory policy to require proof of vaccination records for service and support dogs in order to enter the Library" and "[i]nstructing its security guards to stop and question people with service dogs at the entry to its buildings." *Id.* ¶¶ 35-36.

In his third claim ("Claim Three"), Lewis asserts that CCSF denied him "full access to the benefits of its programs and activities for which Defendant receives financial assistance from the State of California, and unlawfully subjected Plaintiff and other persons with disabilities to discrimination within the meaning of California Government Code section 11135(a) on the basis of his disability." *Id.* ¶ 44. In particular, he asserts that "[t]he discrimination includes: A. Instituting a discriminatory policy to require proof of vaccination records for service and support dogs in order to enter the Library; and B. Instructing its security guards to stop and question people with service dogs at the entry to its buildings." *Id.* In addition, he asserts that CCSF violated California Government Code section 11135(b) "in that Defendant violated the Americans with Disabilities Act[,]" which is "per se a violation of section 11135(b)." *Id.* ¶ 46.

In his fourth claim ("Claim Four"), Lewis alleges that CCSF "discriminated against Plaintiff and violated his rights under the California Disabled Persons Act ('DPA'), section 54 *et seq.* of the California Civil Code," and in particular, sections 54(c) and 54.1(d) of the California Civil Code. *Id.* ¶¶ 48-50. He asserts that "[e]ach violation of the Americans with Disabilities Act of 1990 also constitutes a separate violation of sections 54(c) and 54.1(d) of the California Civil Code, thus independently justifying an award of damages and injunctive relief pursuant to

effective as that provided to others;
(iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others;
(v) Aid or perpetuate discrimination against a qualified handicapped person by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any aid, benefit, or service to beneficiaries of the recipients program or activity;
(vi) Deny a qualified handicapped person the opportunity to participate as a member of planning or advisory boards; or
(vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.

34 C.F.R. § 104.4(b)(1).

California law." *Id.* ¶ 50. He further alleges that "the discrimination under the DPA, both under sections 54(a) and 54.1(a) and by incorporation of the ADA, include: A. Instituting a discriminatory policy to require proof of vaccination records for service and support dogs in order to enter the Library; and B. Instructing its security guards to stop and question people with service dogs at the entry to its buildings." *Id.* ¶ 51.

Plaintiff seeks declaratory relief, injunctive relief (on Claims One through Three only), and damages. *Id.*, Prayer.

### B.   Contentions of the Parties

#### 1.   Motion

In the Motion, CCSF contends Lewis fails to establish any violation of the ADA or the Rehabilitation Act – and by extension, the statutes upon which he bases his state law claims, which CCSF contends are based on the alleged violations of the ADA – based on disparate treatment, disparate impact or failure to provide a reasonable accommodation. Because Lewis makes clear in his Opposition brief that he is not asserting a disparate impact claim, the Court does not address CCSF's arguments related to that theory.

CCSF asserts that Lewis has not plausibly alleged discrimination claims under the ADA and Rehabilitation Act based on the events of April 8, 2025 because: 1) he was ultimately permitted to enter the Library and his allegation that being stopped and questioned by two security guards caused him emotional distress is not sufficient to establish discrimination because "'[d]ifficulty in accessing a benefit . . . does not by itself establish a lack of meaningful access.' " Motion at 7 (quoting *Baugher v. Wash. State Univ.*, No. 4:17-CV-5190-TOR, 2018 WL 11512660, at *2 (E.D. Wash. Mar. 30, 2018)); and 2) he does not state a claim based on failure to offer a reasonable accommodation because he did not formally request an exemption from the Library policy until May 2025. *Id.* (citing Complaint ¶ 24).

Next, CCSF argues that Plaintiff has not plausibly alleged that he will be denied meaningful access to the library in the future because the Library's policy does not treat him less favorably than non-disabled people but rather, treats him *more* favorably than non-disabled people, who generally are not permitted to bring pets into the library, even if they show proof of

United States District Court
Northern District of California

vaccination. *Id.* at 8 (citing CCSF Request for Judicial Notice, Ex. A ("Policy")).[6]

CCSF further asserts that while "[h]istorically, plaintiffs could meet their burden to show a challenged policy denied them meaningful access under Title II of the ADA by demonstrating the policy ran afoul of a specific enabling regulation[,]" "Lewis fail[s] to state a claim even under this historic approach because the challenged vaccine policy does not violate the regulations he cites." *Id.* at 8.[7] CCSF observes that none of the four regulations cited by Plaintiff (28 C.F.R. § 35.136(f), 28 C.F.R. § 35.136(a), 28 C.F.R. § 35.136(g) and 34 C.F.R. § 104.4(b)(1)) "address[es] rabies vaccinations." *Id.* Rather, it asserts, these regulations are simply "high-level generalized standards that public entities should (1) 'permit use of a service animal by an individual with a disability;' (2) permit persons accompanied by service animals 'in all areas' where members of the public 'are allowed to go;' and (3) should not limit a qualified individual 'in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others,' respectively." *Id.* at 8-9. According to CCSF, its policy meets these requirements because Lewis can enter any library branch with his service dog with proof of rabies vaccinations, '[t]here are no areas of the Library open to sighted patrons Lewis cannot access[,] [a]nd there are no opportunities the Library offers to sighted patrons it does not also offer Lewis." *Id.* at 9.

With respect to Lewis's reliance on 28 C.F.R. § 35.136(f) (erroneously cited as 28 C.F.R. §

---

[6] CCSF requests that the Court take judicial notice of the Library's website page setting forth its policy titled "Information for People with Service and Support Animals," available at https://sfpl.org/services/ accessibilityservices/information-people-service-and-support-animals, referenced in Paragraph 17 of the Complaint. CCSF Request for Judicial Notice in Support of Motion to Dismiss ("CCSF RJN") at 1. Plaintiff does not oppose the request, which the Court GRANTS. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment"); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (courts may "take judicial notice of matters of public record outside the pleadings."). CCSF also asks the Court to take judicial notice of the State of California Health and Human Service Agency's Annual Declaration of Rabies, dated January 1, 2025 (CCSF RJN Ex. B), and two United States Department of Justice webpages regarding service animals (CCSF RJN Exs. C-D), as matters of public record not reasonably subject to dispute. Because the Court does not rely on these documents, it declines to rule on these requests.

[7] CCSF suggests that this "heuristic for meaningful access" may not still apply in the wake of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) but assumes for the purposes of the instant Motion that it does. Because CCSF did not brief the impact of *Loper Bright* on existing law in the Motion, the Court finds that it waived any challenge to the pleadings based on that decision.

35.135(f) in the Motion), CCSF contends the language in that regulation stating that public entities may not "require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal" relates only to inquiries about "the nature and extent of a person's disability" and what tasks the animal has been trained to perform. *Id.* According to CCSF, this regulation does not apply because Lewis does not allege that "anyone questioned him at all about the nature and extent of his disability" or that anyone "questioned his assertion that the dog was a service animal" or "asked him what types of tasks his service dog performed." *Id.*

CCSF argues further that Lewis does not plausibly allege that the modification he requests – being excused from the requirement that he provide proof of his dog's vaccination status – is reasonable and necessary because he alleges no facts that "connect Lewis' blindness to the modification he requests." *Id.* According to CCSF, " '[t]here must . . . be some alleged link between the accommodation requested and the disability claimed, since the accommodation is meant to enable the disabled individual to overcome that disability to achieve equal access in some way.' " *Id.* at 10 (quoting *Manson v. Md. State Bd. of Physicians*, No. 1:20-CV-03345-SAG, 2021 WL 2352285, at *4 (D. Md. June 9, 2021)).

CCSF argues that Lewis's failure to link the Library's policy to his disability "makes his claims especially implausible where state and local laws, which Lewis does not challenge, independently require service dog owners to vaccinate their animals." *Id.* (citing Cal. Health & Safety Code § 121690; S.F. Health & Safety Code § 41.18). It also contends the Library's policy is the same "rabies protocol the Ninth Circuit described favorably in" *Crowder v. Kitagawa*, 81 F.3d 1480, 1482 (9th Cir. 1996). *Id.* In that case, according to CCSF, the blind plaintiffs challenged a 120-day quarantine policy that the State of Hawai'i applied to all carnivorous animals brought into the state and suggested that a vaccination protocol would be a reasonable accommodation for blind people traveling with their service dogs. *Id.* at 10-11. While the court in *Crowder* found there was a genuine dispute of material fact as to whether this would be a reasonable accommodation, the policy challenged here does not plausibly allege that an exception from the Library's vaccination policy was both reasonable and necessary, according to CCSF. *Id.* at 11.

8

Finally, CCSF argues that because Lewis's claims fail for "fundamental legal reasons" he cannot cure them by amendment. *Id.* at 12. Therefore, it asserts, the case should be dismissed with prejudice. *Id.*

### 2. Opposition

In his Opposition, Lewis contends he has been subject to disparate treatment under the ADA and the Rehabilitation Act because the Library's policy "burdens only people with disabilities who use a particular method of mitigating their disabilities[,]" "requir[ing] persons who are disabled and use service dogs to stop at the entry and provide documentation that the dog is vaccinated for rabies, as a condition of using Library services." Opposition at 10. This policy is discriminatory on its face, Lewis contends, and is not facially neutral. *Id.* Even if the policy *were* facially neutral, according to Lewis, it would be discriminatory because it places an undue burden on disabled people. *Id.* (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)). In particular, he asserts, "the Library policy disproportionly burdens disabled service dog users by making them carry documentation, interrupting their progress into the library to show the documentation, and ejecting them if they cannot produce the documentation." *Id.* at 11. Lewis asserts that the Court can therefore find that he has alleged discrimination based on "the language of the statutes and the Circuit cases interpreting them." *Id.*

Lewis contends that a further ground for finding that he has plausibly alleged discrimination is the ADA regulations "defin[ing] prohibited forms of disability discrimination to include providing an unequal opportunity to participate in the program or service, and utilizing 'criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination.'" *Id.* (quoting 28 C.F.R. §§ 35.130(b)(1), (b)(3)). According to Lewis, "[t]he regulations specifically require equal access for persons using service dogs in mitigation of their disabilities, and specifically prohibit public entities from demanding documentation." *Id.* (citing 28 C.F.R. § 35.136(f)).

Lewis rejects CCSF's interpretation of 28 C.F.R. § 35.136(f), which he contends "ignores the plain language of the regulation." *Id.* In particular, Lewis asserts, this regulation "makes an absolute prohibition" when it states, " 'A public entity shall not require documentation', then in a

United States District Court
Northern District of California

subordinate clause ('such as') provides nonexclusive examples of prohibited documentation." *Id.* at 12. Lewis argues that this reading of the regulation is also consistent with the Ninth Circuit's decision in C.*L. v. Del Amo Hosp., Inc*., 992 F.3d 901 (9th Cir. 2021), in which it held that "the ADA prohibits public accommodations from requiring service dog users to provide proof of 'certification' about the dogs' training or skills." *Id.* According to Lewis, "[o]ne basis for [the court's] ruling was [that] the Title III regulations expressly prohibit asking service dog users for documentation of any kind, as a condition of admission." *Id.* Lewis contends the same analysis applies under Title II because "[t]he Title III regulations use the same language about documentation as the Title II regulations." *Id.* (citing 28 C.F.R. § 36.302; 35 C.F.R. § 35.136).

Lewis also rejects CCSF's argument that he has not stated a claim for failure to provide a reasonable accommodation. *Id.* at 12-13. He argues that "[d]enial of a reasonable accommodation, in the form of modifying policies when necessary to ensure equal access to programs, services and activities of a government entity, is a violation of the ADA and the [Rehabilitation] Act" and further asserts that "[a] request for an accommodation to use a service animal is per se reasonable." *Id.* at 12-13 (citing *Berardelli v. Allied Servs. Inst. of Rehab. Med*., 900 F.3d 104, 123–24 (3d Cir. 2018)). Thus, he contends, "it is presumptively reasonable to allow disabled persons using a service dog equal access to the Library on the same basis as nondisabled patrons." *Id.* He argues that "[a]t a minimum, by asserting that the Library's policy is based on reasonable public health needs, Defendant raises a dispute of fact over the reasonableness of Plaintiff's request to enter without providing documentation[,]" which cannot be decided at the pleading state of the case. *Id.* at 13. He makes clear that he "does not challenge state and local laws requiring dogs be vaccinated. His request for reasonable accommodation relates only to the documentation requirement as a condition for use of the Library." *Id.* n. 5.

Lewis contends CCSF mischaracterizes *Crowder* when it states in the Motion that the *Crowder* court described the same rabies protocol "favorably." *Id.* at 13 n. 6. According to Lewis, the court in *Crowder* "merely described the policy modifications the plaintiffs requested in that case, without even asserting in dicta that they were reasonable." *Id.* (citing *Crowder*, 81 F.3d at 1482, 1486). Moreover, Lewis asserts, the court in that case "emphasized that the propriety of

Hawai'i's policy and the suggested accommodations were both questions of fact." *Id.* The same is true here, he contends. *Id.*

Lewis also rejects CCSF's "specious" argument that it did not discriminate because he was ultimately permitted to enter the Library. *Id.* He points to his allegations that he was stopped twice by security guards and asserts that "[p]roviding access 'in some fashion' does not satisfy Title II where disabled individuals face greater difficulty participating in programs, services, or activities." *Id.* Rather, he contends, "[p]olicies that make access more burdensome or unequal constitute discrimination, even absent complete exclusion." *Id.* at 14 (citing *Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004); *McGary*, 386 F.3d at 1265; *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001); *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001)).

Lewis also argues that CCSF is "wrong to assert Plaintiff must plead or prove a denial of 'meaningful access' in order to prevail in this case." *Id.* He points out that the term "meaningful access" "is not found in the ADA, the [Rehabilitation] Act, or their implementing regulations" and asserts it is a "gloss" on the Rehabilitation Act "first used in the Supreme Court opinion *Alexander v. Choate*, 469 U.S. 287 (1985), for use in disparate impact cases only." *Id*. According to Lewis, denial of "meaningful access" is not an element of his disparate treatment claim or his claim for failure to offer reasonable accommodation. *Id.* He contends the court in *Crowder* considered meaningful access only in connection with the plaintiffs' disparate impact claim in that case and that when the court turned to the question of reasonable accommodation, it "confirmed that the question was whether 'the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" *Id*. at 15 (quoting *Crowder*, 81 F.3d at 1485). The *Crowder* court characterized that question as "highly fact-specific[,]" according to Lewis. *Id.* (citing *Crowder*, 81 F.3d at 1486).

Lewis also rejects CCSF's argument that he was not discriminated against on April 8, 2025 because he did not make a formal complaint to the City until May, describing this argument as "Orwellian" and asserting that CCSF offers no authority for it. *Id.*

Lewis argues that CCSF's assertion that the Library's policy is "reasonable as a public

11

health measure" is not a legal argument but instead an assertion of fact that is not properly addressed at the pleading stage of the case. *Id.* at 15-16. He states that he does not challenge that local and state vaccination requirements but asserts that these laws are not material to this case because "[n]one of those state and local regulations make[s] vaccination a condition of entry to public buildings, and if they did, it would be a mixed question of fact and law whether they must yield to the ADA's right of equal access to public services." *Id.* Lewis contends CCSF "has proffered no legal authority mandating its library system to query service dog users on vaccination status" and further asserts that "[i]n San Francisco the libraries apparently are the only government buildings with a policy requiring vaccination documentation as a requirement of access to public services." *Id.* (citing https://www.sf.gov/information--service-and-support-animals (last visited 2/4/2026) (City policy addressing service animal admission to City buildings)); *see also id.* at 7 (requesting the Court take judicial notice of this web page on the basis that it is a matter of public record not reasonably subject to dispute under Fed. R. Evid. 201(b)(2)); Declaration of Celia McGuiness in Support of Plaintiff's Opposition to Motion to Dismiss for Failure to State a Claim ("McGuinness Decl.") ¶ 3 & Ex. A.[8] According to Plaintiff, "[o]n summary judgment or at trial it may be appropriate to ask whether the public health risk of rabies being contracted from service dogs at a library renders the policy reasonable and a request for modification unreasonable" but that issue turns on facts that have not yet been determined, such as whether there is "any public health connection between libraries and rabies" or "[b]etween service animals and rabies." *Id.* at 16. These are not appropriate reasons to dismiss his claims at the pleading stage, Lewis contends. *Id.*

---

[8] Lewis also requests the Court take judicial notice of: 1) a web page on the California Department of Health's website stating, "In the last 50 years (1972-2023), 19 cases of rabies were identified in California residents, the last case reported in 2012. Approximately half of these infections were acquired domestically and half outside the U.S."; and 2) a statement on a San Francisco government web page stating that "In San Francisco, all animal rabies cases since the 1940s have occurred in bats." *See* Motion at 7; McGuinness Decl. ¶¶ 4-5 & Exs. B, C. He offers these documents "to rebut Defendant's argument that public health needs require service dog owners entering public libraries to show proof of rabies vaccination" but requests that the Court disregard these documents if it finds that they are not properly subject to judicial notice. Motion at 8. Because the Court does not rely on these documents to decide the Motion, it does not rule on Plaintiff's request that the Court take judicial notice of them.

United States District Court
Northern District of California

Case 3:25-cv-09276-JCS    Document 28    Filed 03/02/26    Page 13 of 26

Finally, Plaintiff contends his state law claims are independent of his federal claims and therefore, those claims survive even if the Court dismisses his ADA and Rehabilitation Act claims. *Id.*

### 3. Reply

CCSF contends in its Reply that Lewis "concedes much[,]" including that "the Library can lawfully require his service dog to be vaccinated." Reply at 1. According to CCSF, Lewis "also identifies nothing about his vision impairment that makes it more onerous for him to provide the Library with proof of vaccination as compared to a non-disabled patron" and "admits he has no disparate impact claim and only alleges disability claims under theories of disparate treatment and failure to accommodate." *Id.* CCSF contends these "remaining theories fail on the facts alleged as a matter of law." *Id.*

CCSF reiterates its position that Lewis has not alleged disparate treatment because it treats him more favorably than non-disabled patrons by allowing him to bring a dog into the Library at all. *Id.* at 2-3. It further contends Lewis's reliance on *McGary* and *Crowder* is misplaced because *McGary* involved a failure to provide reasonable accommodation, as did the section of *Crowder* upon which Lewis relies. *Id.*

CCSF also rejects Lewis's reliance on the Title II regulations cited in the Complaint and the two new regulations cited in his Opposition – 28 C.F.R. §§ 35.130(b)(1), (b)(3) – on the grounds that they are "high-level regulations that simply prohibit discrimination on the basis of disability." *Id.* at 4. In addition, it asserts, Lewis's reliance on 28 C.F.R. section 35.136(f) is misplaced for the reasons stated in the Motion and *C.L.* does not help him, instead "highlight[ing] the distinction between impermissible requests for documentation focused on a person's disability and requests that do not focus on a person's disability like the proof of vaccination requirement at issue here." *Id.* at 4-5. According to CCSF, in *C.L.*, "[t]he Ninth Circuit reversed and remanded because it found that a formal certification was not necessary for a dog to qualify as a service animal under the ADA for three reasons: (1) the ADA 'defines a service dog functionally, without reference to specific training requirements'; (2) DOJ's enabling regulations 'consistently rejected a formal certification requirement,' and (3) 'allowing a person with a disability to self-train a

13

United States District Court
Northern District of California

service animal furthers the stated goals of the ADA' since training could be prohibitively expensive." *Id.* at 5 (citing *C.L.*, 992 F.3d at 910). CCSF argues that "[n]one of those concerns apply here, particularly where Lewis acknowledges he has a legal obligation to vaccinate his service dog." *Id.*

CCSF also reasons that because Lewis admits that the Library can require that his dog must be vaccinated against rabies to enter it would be "nonsensical" for the Court to hold that the City may not enforce that requirement by requiring proof of vaccination. *Id.* In support of that reasoning, it points to the observation in *C.L.* that the "reverse" would be "nonsensical," that is, that "it would be nonsensical for the ADA to effectively require certification" of a service animal since "public accommodations are prohibited from asking for proof of it." *Id.* (quoting *C.L.*, 992 F.3d at 913 n.7).

Next, CCSF argues, for the first time, that "enabling regulations no longer establish disparate treatment following the Supreme Court's opinion in *Loper Bright Enters. V. Raimondo*, 603 U.S. 369, 395 (2024)[.]" *Id.* at 4, 6-7. Without identifying any specific case, CCSF asserts that "[t]o the extent that the Ninth Circuit previously held enabling regulations establish the standards for evaluation of claims under the ADA such that violating these standards constitutes discrimination, the case law is irreconcilable with *Loper Bright* and should be overruled." *Id.* at 7. CCSF further asserts that under *Loper Bright*, "the Court should not give deference to regulations that would do what Lewis proposes because they exceed the boundaries of the type of discrimination the ADA is designed to address—discrimination on the basis of disability." *Id.* at 7 (citing *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26 (1982)).[9]

CCSF reiterates its assertion that the accommodation Lewis requests is unreasonable as a matter of law, asserting that while this is generally a fact question, here it can be decided as a matter of law because a modification of a policy must "seem[ ] reasonable on its face" and this one

_____

[9] As noted above, CCSF made a vague suggestion in the Motion that this case "called into question" previous precedent in which regulations were treated as a "heuristic for meaningful access." *See* Motion at 8. CCSF did not, however, make the argument that Lewis could not under *Loper Bright* rely on the regulations cited in the complaint to allege discrimination. To the extent CCSF wished to rely on that case as a basis for dismissal, it could and should have briefed that question in the Motion instead of doing so for the first time in its reply brief.

does not. *Id.* at 8 (quoting *Smith v. City of Oakland*, No. 19-CV-05398-JST, 2025 WL 2444450, at *5 (N.D. Cal. Aug. 25, 2025)). Furthermore, CCSF asserts, an accommodation is only "necessary" if "there [is] a causal link between the requested accommodation and the plaintiff's disability." *Id.* (quoting *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1191 (9th Cir. 2021) (citation omitted)). Here there is no such causal link, CCSF contends. *Id.*

CCSF also suggests that the requested accommodation fails as a matter of law because Lewis "request[ed] "only one alternative, which is unfettered access' to the Library without any proof of vaccination." *Id.* at 9 (quoting *Young v. City of Claremore*, Okla., 411 F. Supp. 2d 1295, 1310 (N.D. Okla. 2005)). And it quotes a Sixth Circuit case for the proposition that "an accommodation is not reasonable if it requires more than a 'moderate' change to existing policies." *Id.* (citing *Booth v. Lazzara*, 164 F.4th 581, 589 (6th Cir. 2026)).

With respect to Lewis's assertion that the meaningful access requirement applies to disparate impact claims and not to disparate treatment claims, CCSF argues that Lewis "leaves unsaid" the fact that this standard also applies to reasonable accommodation claims. *Id.* (citing *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) ("An organization that receives federal funds violates § 504 if it denies a qualified individual with a disability reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services"); *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016) ("A plaintiff may establish prohibited discrimination under section 504 and Title II by showing that a public entity denied her a 'reasonable modification' necessary to achieve meaningful access to her education")). According to CCSF, Lewis's alleged encounters with two security guards who asked him for proof of his dog's vaccination are not enough to raise a plausible inference that he was denied meaningful access to the Library's services. *Id.* (citing *Kirola v. City & Cnty. of San Francisco*, 74 F. Supp. 3d 1187, 1252 (N.D. Cal. 2014), aff'd in part, rev'd in part, 860 F.3d 1164 (9th Cir. 2017) ("the fact that [plaintiff] and some class members may have experienced difficulty accessing the City's public-right-of-way, while understandably frustrating, does not prove that the City has failed [to] provide program access as required by the ADA"); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1088 (11th Cir. 2007) ("finding no ADA

15

violation where deaf arrestee who requested an interpreter did not receive one but instead was provided information 'aloud twice' and received a written copy because that was sufficient to establish 'effective communication' "); *People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1216 (N.D. Ala. 2020) ("[M]ere difficulty in accessing a benefit is not, by itself, a violation of the ADA. Instead, a plaintiff must show that the failure to accommodate created an injury")).

CCSF argues that "the more extreme cases Plaintiff cites where the plaintiff stated an ADA claim even absent complete exclusion" are not on point. *Id.* at 10 (distinguishing *Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004); *McGary*, 386 F.3d at 1265; *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001); *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001)).

CCSF also argues that Lewis "misunderstands" the City's purpose in relying on public health documents. *Id.* at 11-12. In particular, CCSF asserts, it does not offer these documents to show that rabies presents a public health risk to Library patrons but instead "to show Lewis has a legal obligation to vaccinate his service dog independent of the Library's policy, which is relevant to defeat his ADA claims." *Id.* at 11. CCSF states that to the extent Lewis now stipulates that he is required under state and local law to vaccinate his service dog, it has "no objection to the Court relying on Lewis' admissions rather than Exhibits B-D to the City's Request for Judicial Notice to prove this point." *Id.* On the other hand, CCSF objects to Lewis's request that the Court take judicial notice of documents that he offers to show that rabies do not pose a public health risk, which it contends is not relevant to CCSF's arguments. *Id.* at 11-12.

Finally, CCSF argues that Lewis fails to identify any independent grounds upon which his state law claims are based that would save those claims from dismissal; nor has he pointed to any facts he could allege that would cure the defects in his claims such that amendment of the complaint should be permitted. *Id.* at 12-13.

## III.    ANALYSIS

### A.    Legal Standards

#### 1.  Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

16

for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Tombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 570).

### 2. The ADA and Rehabilitation Act

Title II of the ADA provides that: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

17

United States District Court
Northern District of California

entity." 42 U.S.C. § 12132. Therefore, in order to state a claim of disability discrimination under Title II, Lewis must allege four elements: (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam), cert. denied, 538 U.S. 921 (2003).

"Similarly, under Section 504 of the Rehabilitation Act, a plaintiff must show: (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (citing 29 U.S.C. § 794; *Bonner v. Lewis*, 857 F.2d 559, 562–63 (9th Cir.1988); *Doherty v. Southern College of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988)).

A discrimination claim under Title II and the Rehabilitation Act may be asserted based on disparate treatment, disparate impact or failure to provide a reasonable accommodation. *See McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004). Here, Lewis asserts his claims based on disparate treatment and failure to provide a reasonable accommodation.

Because there "is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act[,]" "courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). The parties have not differentiated between Lewis's ADA and Rehabilitation Act claims and therefore the Court also assumes that the same analysis applies to both claims.

### B. Whether Plaintiff States a Discrimination Claim Under the ADA and Rehabilitation Act Based on Disparate Treatment

Although it is not always clear which of CCSF's arguments are aimed at Lewis's disparate treatment claim and which arguments are aimed at his reasonable accommodation claim, the Court construes the Motion as asserting two main challenges to Lewis's disparate treatment claim. First,

18

it contends Lewis was not subject to disparate treatment because under the Library's policy he was treated *better* than non-disabled people generally (who cannot bring their pets into the Library at all) and no worse than non-disabled people who seek to bring emotional support animals into the Library (who must also show proof of vaccination). Second, it asserts that Lewis has not established any violation of the ADA's regulations, which do not prohibit CCSF from demanding proof of rabies vaccination. The Court does not find these arguments convincing.

The theory of Lewis's disparate claim is that he was treated *less* favorably than non-disabled people because the Library's policy requires him to carry documentation when he visits the Library and to present that documentation to a security guard in order to access services, whereas non-disabled people can enter the Library freely, without presenting documentation of any sort. Plaintiff alleges that the Policy calls attention to his disabled status and imposes an undue burden on him and further, that the Library refuses to waive the Policy for him.

The burden associated with presenting documentation in connection with the use of a service animal has been recognized in Title II regulations, namely, in 28 C.F.R. § 35.136(f). While CCSF argues that that regulation should be read to limit requests for documentation only to the extent that such requests relate to the question of whether the animal qualifies as a service animal, the regulation can also be read more broadly as it states, categorically, that "[a] public entity shall not require documentation[.]" The Court need not decide how broadly the agency intended this prohibition to be read, however, as the Ninth Circuit has recognized that *in general*, "requiring individuals with disabilities to carry around documentation may be 'unnecessary, burdensome, and contrary to the spirit, intent, and mandates of the ADA.' " *C. L. v. Del Amo Hosp., Inc.*, 992 F.3d 901, 913 (9th Cir. 2021) (citing Final Rule, 75 Fed. Reg. at 56272).

In *C.L.,* the Ninth Circuit addressed whether, under Title III of the ADA, a place of public accommodation may require a disabled person to present evidence that their service animal has been certified as a service animal and concluded, based in part on 28 C.F.R. § 36.104 -- a regulation with language identical to the language in 28 C.F.R. § 35.136(f) -- that it may not. The court in that case cited the Department of Justice's response to public comment in connection with the finalization of the regulation in which it stated:

19

> Some commenters suggested that a title III entity be allowed to require current documentation, no more than one year old, on letterhead from a mental health professional stating the following: (1) That the individual seeking to use the animal has a mental health-related disability; (2) that having the animal accompany the individual is necessary to the individual's mental health or treatment or to assist the person otherwise; and (3) that the person providing the assessment of the individual is a licensed mental health professional and the individual seeking to use the animal is under that individual's professional care. These commenters asserted that this will prevent abuse and ensure that individuals with legitimate needs for psychiatric service animals may use them. The Department believes that this proposal would treat persons with psychiatric, intellectual, and other mental disabilities less favorably than persons with physical or sensory disabilities. *The proposal would also require persons with disabilities to obtain medical documentation and carry it with them any time they seek to engage in ordinary activities of daily life in their communities—something individuals without disabilities have not been required to do.*
>
> Accordingly, the Department has concluded that a documentation requirement of this kind would be unnecessary, burdensome, and contrary to the spirit, intent, and mandates of the ADA.

Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 FR 56236-01 (emphasis added).

While the court in *C.L.* addressed a different question than the Court is faced with here, its recognition that requiring disabled people to carry documentation with them when they "seek to engage in ordinary activities of daily life" may be unnecessarily burdensome is a sufficient basis for the Court here to find that Plaintiff has, at the pleading stage, plausibly alleged that he has been (and will be) subjected to disparate treatment under the ADA and the Rehabilitation Act.

CCSF argues that *C.L.* "highlights the distinction between impermissible requests for documentation focused on a person's disability and requests that do not focus on a person's disability like the proof of vaccination requirement at issue here." Reply at 5. But the court in *C.L.* did not consider or address that distinction. Nor is the Court convinced by CCSF's reliance on the *C.L.* court's reasoning that "it would be nonsensical for the ADA to effectively require certification when public accommodations are prohibited from asking for proof of it" to argue that the opposite is also true, namely, that if state and local governments are permitted to require that service dogs be vaccinated against rabies then it would be "nonsensical" to prohibit the Library to ask for proof of vaccination. Apart from the lack of authority supporting that conclusion, the logic

20

is also flawed: while the *C.L.* court was reconciling the requirements of the ADA and the regulations that *implement* that statute, the question here is how state and local public health rules interact with the requirements of Title II and the Rehabilitation Act. The enactment of these state and local laws do not allow the Court to draw *any* conclusions as to whether the manner in which those laws are enforced by CCSF may run afoul of the ADA and the Rehabilitation Act.

The Court therefore finds that Lewis has stated a claim for disability discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act based on disparate treatment.

### C. Whether Plaintiff States a Discrimination Claim Under the ADA and Rehabilitation Act Based on Failure to Provide Reasonable Accommodation

The heart of Plaintiff's case is his claim of discrimination based on failure to provide reasonable accommodation and most of CCSF's arguments appear to be aimed at that claim. The Court construes the Motion as asserting that Lewis's reasonable accommodation claim fails, as a matter of law, because: 1) the burden imposed on Lewis in requiring that he present documentation of his dog's vaccination status is too insignificant to show that he has been denied "meaningful access" to Library services; 2) the accommodation he requests is not reasonable or necessary.[10] The Court rejects these arguments.

As a preliminary matter, the parties disagree on the question of whether an individual asserting a reasonable accommodation claim under the ADA and the Rehabilitation Act must establish that they have been denied "meaningful access" to services. *See* Opposition at 14 ("The concept [of meaningful access] does not apply to disparate treatment or reasonable accommodation cases"); *c.f.* Reply at 9 ("What Lewis leaves unsaid is that the 'meaningful access' standard also applies in failure to accommodate claims like the one Lewis brings."). CCSF cites the Ninth Circuit's statement in *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, in which the plaintiff asserted a reasonable accommodation claim under Title II and the Rehabilitation Act, that "[a] plaintiff may establish prohibited discrimination under section 504 and Title II by showing that a public entity denied her a 'reasonable accommodation' necessary to achieve meaningful

---

[10] As noted above, CCSF has stipulated that it is *not* seeking dismissal on the basis that the Library policy constitutes a reasonable accommodation based on public health concerns, which it concedes would be a fact-specific question that cannot be decided at the pleading stage of the case.

United States District Court
Northern District of California

access to her education." 815 F.3d 1195, 1206 (9th Cir. 2016).  As Lewis points out, however, the term "meaningful access" is not used in the statutes themselves or their implementing regulations. Opposition at 14.  Nor do the elements of an ADA Title II or Rehabilitation Act claim, listed above, include a requirement that a plaintiff must prove denial of meaningful access as an element of the claim.

The Court does not decide this question, however, because even assuming a plaintiff asserting a reasonable accommodation claim must prove, as a threshold matter, that they have been denied "meaningful access," the allegations here are sufficient to meet that requirement. First, for the reasons discussed above, the Court finds that Plaintiff's allegation that the requirement that he carry with him and present documentation of his dog's vaccination status to access Library services is unduly burdensome under the ADA is sufficient, at the pleading stage of the case, to raise a plausible inference that Lewis was denied meaningful access to the Library.

The Court finds unpersuasive CCSF's reliance on *Baugher v. Washington State University*, in which the court observed that "[d]ifficulty in accessing a benefit . . . does not by itself establish a lack of meaningful access." No. 4:17-CV-5190-TOR, 2018 WL 11512660, at *2 (E.D. Wash. Mar. 30, 2018) (quoting *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1329 (N.D. Ga. 2017)).  In *Baugher*, the plaintiff asserted claims against a state university under the ADA and the Rehabilitation Act on the basis that a veterinary clinic operated by the university refused to treat her dog because she could not pay cash up-front for the dog's treatment as was required under the clinic's policy.   2018 WL 11512660, at *1.  The plaintiff alleged that "although she had the funds available in her account[,] she was unable to withdraw the needed cash without having to travel hundreds of miles to her bank, which – as she alleges – she could not do because of a disability." *Id.*  The plaintiff asserted claims for failure to provide a reasonable accommodation but the court found that her claim failed, as a matter of law, because she was not denied meaningful access "by reason of" her disability. *Id.*  at *3.  The court explained:

> Plaintiff was denied services because her "financial circumstances" prevented her from being eligible for the services, not "by reason of" or "solely because of" her alleged disability. *Weinreich*, 114 F.3d at 979. While Plaintiff attempts to link her disability, her inability to drive, and her banking situation to WSU's ultimate denial of services,

22

the connection is too tenuous. It was her particular financial situation – having a distant bank and not otherwise having enough cash on hand – that prevented her from accessing WSU services.

*Id.* The *Baugher* court recognized, however, that "a plaintiff can demonstrate a policy denied services 'by reason of' his or her disability when the policy 'treat[s] disabled [persons] differently or create[s] disproportionate burdens because of the nature of their limitations or even their status as individuals with disabilities.'" *Id.* (quoting *Brown v. City of Los Angeles*, 521 F.3d 1238, 1242 (9th Cir. 2008)).

Here, the policy at issue is not like the cash up-front policy in *Baugher*, which the court found burdened the plaintiff for reasons that were only indirectly related to her disability. Instead, the documentation policy at issue here applies almost exclusively to individuals who seek to access Library services by using a service animal; in other words, it is *because* of Lewis's status as a disabled person that he must comply with this policy. Therefore, at the pleading stage of the case, at least, Plaintiff has adequately alleged that he was (or will be) denied services "by reason of" his disability, in contrast to *Baugher*.[11]

Nor is the Court persuaded that the accommodation Lewis requests is unreasonable and/or unnecessary, as a matter of law, because the accommodation he requests is not related to his disability. CCSF cites a single, out-of-circuit case in support of its position, *Manson v. Maryland State Bd. of Physicians*, No. 1:20-CV-03345-SAG, 2021 WL 2352285, at *4 (D. Md. June 9, 2021), but that case is distinguishable from the facts here. In *Manson*, a pro se plaintiff who alleged that he was disabled because he was autistic sued the state's medical licensing board under Title II of the ADA and Section 504 of the Rehabilitation Act on the basis that it had denied his request that it remove from various databases information reflecting that he had been denied a medical license many years before. 2021 WL 2352285, at *3. Although the plaintiff framed his request as a request for reasonable accommodation of his disability, the court found that based on the factual allegations, it was not a request "for accommodation at all[,]" reasoning:

Put in the simplest terms, the purpose of a reasonable accommodation

_____

[11] Because the Court finds that *Baugher* is distinguishable from the facts here, it need not decide whether that case was correctly decided.

United States District Court
Northern District of California

under the ADA and Rehabilitation Act is to accommodate the seeker's disability and allow him to equal access an institution's services, programs, or benefits that he might otherwise have difficulty accessing due to his disability. *See, e.g., Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 556 (D. Md. 2019) (stating that accommodations under ADA Title II are provided to ensure disabled individuals equal access to various facets of prison life); *Constantine*, 411 F.3d at 488 ("In the context of public higher education, Title II requires state colleges and universities to make reasonable accommodations for disabled students to ensure that they are able to participate in the educational program."). There must, then, be some alleged link between the accommodation requested and the disability claimed, since the accommodation is meant to enable the disabled individual to overcome that disability to achieve equal access in some way. The plain language of the statute confirms that the accommodation (or modification) sought must be related to the disability in question.

For example, ADA Title II refers to "reasonable modifications to rules, policies, or practices" alongside actions like "the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services," all of which are referenced in the context of assisting a disabled individual to access a public entity's programs or activities. 42 U.S.C. § 12132. This interpretation, requiring a link between the disability and the accommodation requested, is further supported by simple common sense—reasonable accommodation, in a statutory scheme designed "to promote equal access and participation in government services," *Seremeth*, 673 F.3d at 340, surely must be an accommodation of the disability in question thus advancing equal access, rather than simply an accommodation in the abstract that improves the requester's life without any connection to the disability (thus not making access any more equal at all).

The above proposition, requiring a link between the accommodation requested and the claimed disability, is so fundamental as to border on tautological. Yet, crucially, such a link is lacking here. Plaintiff's only proffered justification for the accommodation in his initial request to Defendant was to "allow [him] to be employed in teaching or law...."2 ECF 1-9 at 5. His Complaint, meanwhile, repeatedly emphasizes this desire "to be gainfully employed" and conclusorily states, only once and without elaboration, that gainful employment would help him manage his autism. ECF 1 at 6. While there can be no doubt that the removal of the licensure denial reports would be broadly helpful to him as he seeks employment and attempts to obtain licensing in other professions, the same would be true for any person with a history of licensing denial, whether that person has a disabling medical condition or not. There are no allegations supporting the conclusion that removal of the reports from public databases would accommodate Plaintiff's autism in any way, let alone a way that would facilitate his equal access to Defendant's programs, services, or benefits.

*Id.* The court recognized that "[t]he question of whether an accommodation request is reasonable is generally a question of fact that . . . is ill-suited for disposition at summary judgment, let alone

the motion to dismiss stage" but found that "the case as presently pled present[ed] a rather unusual set of circumstances" and therefore dismissed the plaintiff's reasonable accommodation claim on the pleadings. *Id*. (citation omitted).

Here, in contrast to *Manson*, there is a link between the accommodation requested and Lewis's disability: Lewis seeks to access Library services that would otherwise be inaccessible to him because of his disability "to achieve *equal* access in some way[,]" namely, to be able to enter the Library freely, like nondisabled Library patrons, without being stopped and required to present documentation. *Munson,* 2021 WL 2352285, at *4. This accommodation has an obvious connection to the disability for which Lewis seeks an accommodation and is not merely "an accommodation in the abstract that improves the requester's life without any connection to the disability." *Id.*

CCSF's argument also appears to be inconsistent with the well-established rule that a facially neutral statute may violate the ADA's reasonable accommodation requirement to the extent it imposes an undue burden on disabled individuals. *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) ("Although Hawaii's quarantine requirement applies equally to all persons entering the state with a dog, its enforcement burdens visually-impaired persons in a manner different and greater than it burdens others."). Lewis alleges that the Library's policy imposes such an unequal burden on him because the documentation requirement will, among other things, subject him to questioning that calls attention to his disability each time he enters the Library. Thus, to the extent the Policy is facially neutral, it may, nonetheless, be subject to a reasonable accommodation challenge.

Further, the question of whether a requested accommodation is reasonable or necessary is "highly fact-specific, requiring case-by-case inquiry." *Id.* at 1486; *see also Mark H. v. Hamamoto*, 620 F.3d at 1098 ("Reasonableness depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to enjoy meaningful access to the program.") (cleaned up). Thus, in *Crowder*, where the plaintiffs challenged a policy that required that all dogs entering the state be quarantined 120 days to prevent rabies from spreading to

United States District Court
Northern District of California

Hawai'i, the Ninth Circuit remanded the case to the district court "for determination of the factual dispute whether the plaintiffs' proposed modifications to Hawaii's quarantine [were] reasonable under the ADA." *Id.* The court observed that this determination would "necessitate findings of fact regarding the nature of the rabies disease, the extent of the risk posed by the disease, and the probability that the infected animals would spread it." *Id.* Likewise, the question of whether Lewis's requested modification is reasonable will turn on similar factual questions here. Therefore, the Court finds that this issue may not be resolved at the pleading stage of the case.

IV.    **CONCLUSION**

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated:  March 2, 2026

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

26